IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| MELISSA ALEXANDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN UNITED LIFE INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 8:07-cv-2449-RBH |

## DEFENDANT'S REPLY TO PLAINTIFF'S
## MEMORANDUM IN SUPPORT OF JUDGMENT

COMES NOW Defendant, American United Life Insurance Company ("AUL"), by and through its undersigned counsel, and submits this Reply to Plaintiff's Memorandum in Support of Judgment ("Plaintiff's Memorandum"). As set forth in AUL's Memorandum in Support of Judgment, and as amplified herein, the Court should enter judgment in favor of AUL.

### I. ARGUMENT

**A.   BECAUSE PLAINTIFF HAS BEEN PAID ALL OF THE BENEFITS TO WHICH SHE IS ENTITLED FOR DISABILITY DUE TO MENTAL ILLNESS, TO DEMONSTRATE ENTITLEMENT TO ANY ADDITIONAL BENEFITS PLAINTIFF MUST PROVE THAT THE REASON FOR HER TOTAL DISABILITY IS A PHYSICAL IMPAIRMENT.**

In Plaintiff's Memorandum, she argues that her claim for additional long-term disability ("LTD") benefits should be considered based upon both her physical condition and her mental condition. (Pl.'s Mem. at 21-22.) To make this argument, Plaintiff contends that the Group Contract's[1] limitation on the duration of benefits payable for Mental Illness is ambiguous. (Pl.'s

---

[1] "Group Contract" refers to the group LTD insurance policy issued by AUL to Plaintiff's employer.

Mem. at 20-21.) Plaintiff then seeks to have the Court construe the Group Contract's Maximum Benefit Duration against AUL under the doctrine of *contra proferentum*. As discussed in more detail below, Plaintiff's argument ignores the fact that the Group Contract specifically defines the term "Mental Illness." Plaintiff's arguments, therefore, attempt to create an ambiguity where none exists. The Maximum Benefit Duration for a disability due to Mental Illness is clear, and Plaintiff has been paid all the benefits for which she is entitled for a disability due to Mental Illness. Plaintiff's claim that she is entitled to any additional disability benefits under the Group Contract due to her Mental Illness ignores the plain language of the Group Contract and must be rejected.

**1.      The Terms Of The Group Contract Clearly Limit The Duration Of Benefits Payable For A Disability Due To Mental Illness.**

The Group Contract contains a maximum benefit duration for a disability due to Mental Illness. Section 11 of the Group Contract provides, subject to certain hospitalization or institutionalization requirements not applicable in this case, that

> Monthly Benefits for Disability due to Mental Illness will not be payable beyond the Maximum Benefit Duration. In addition, if the Maximum Benefit Duration is longer than 24 months, benefits for Disability due to Mental Illness will not exceed 24 months of Monthly Benefit payments . . . .

(AR 28.) The Group Contract defines "Mental Illness" as "any condition classified as a mental disorder in the <u>American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders</u>, excluding mental retardation." (AR 7.)

Plaintiff was diagnosed with numerous conditions that fit the Group Contract's definition of Mental Illness. These conditions include diagnoses of anxiety, major depression, bipolar disorder, adjustment reaction, and attention deficit disorder. (AR 377, 464, 492, 900, 902, 904.) Depression, anxiety, bipolar disorder, adjustment reaction, and attention deficit disorder are all

2

conditions classified as mental disorders in the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders—Text Revision</u> at 85-93 (attention deficit disorder), 369-76 (depression), 382-97 (bipolar disorder), 429-84 (anxiety), 679-83 (adjustment reaction) (DSM-IV-TR) (4th ed. 2000).  Disability based on these conditions clearly is subject to the Group Contract's 24-month Maximum Benefit Duration.  Additionally, AUL has paid Plaintiff benefits for the Maximum Benefit Duration and then paid Plaintiff an additional three months of benefits (under a reservation of rights) thereafter.  (*See* AR 542.)

> 2. **There Is Nothing Ambiguous About The Group Contract's Maximum Benefit Duration.**
>
>> a. ***Cothran v. Reliance Standard Life Ins. Co*. is distinguishable from this matter and does not support Plaintiff's argument that the Group Contract's Maximum Benefit Duration is ambiguous.**

In Plaintiff's Memorandum, she relies upon *Cothran v. Reliance Standard Life Ins. Co.*, C.A. No. 6:98-3489-20 (D.S.C.), to attempt to support her argument that the Group Contract's Maximum Benefit Duration for a disability due to a Mental Illness is ambiguous.  (Pl.'s Mem. at 20-21.)  In an unpublished order on the parties' cross-motions for summary judgment, the district court in *Cothran* granted the plaintiff's motion for summary judgment.  In an unpublished opinion, the Fourth Circuit Court of Appeals affirmed and adopted the decision of the district court.  *See Cothran v. Reliance Standard Life Ins. Co.*, 1999 U.S. App. LEXIS 37415 (4th Cir. 1999).  AUL respectfully submits under Local Rule 36(c) of the Fourth Circuit's Rules, the *Cothran* decision does not have precedential value in this Court.[2]  Additionally, AUL respectfully submits there are no unusual circumstances that warrant deviation from Local

---

[2] Under Local Rule 36(c) of the Fourth Circuit Rules, "In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions."  Additionally, Local Rule 36(c) provides that citation of the Fourth Circuit's unpublished dispositions "in briefs and oral arguments in [the Fourth Circuit] and in the district courts within this Circuit is disfavored, except for the purpose of establishing *res judicata, estoppel,* or the law of the case."

3

Rule 36(c), and the facts of *Cothran* are readily distinguishable from the present matter. Nevertheless, if this Court chooses to consider either *Cothran* opinion, that case and its factual differences do not support Plaintiff's claims.

Plaintiff contends that in *Cothran*, the district court "was faced with the nearly <u>identical facts and plan language</u>" as in the present matter. (Pl.'s Mem. at 20 (emphasis in original).) While *Cothran* may have involved the application of a durational limit on payment of LTD benefits based on "mental or nervous disorders," there are fundamental factual differences between that case and this matter.[3] First, the disability plan at issue in *Cothra*n did not define the term mental or nervous disorder. However, the Group Contract in the present matter specifically defines Mental Illness. Second, in *Cothran* the insurer based its decision to terminate benefits solely on the plan's mental disorder limitation despite evidence in the record that the plaintiff had both physical and mental ailments. In the present matter, however, when AUL determined Plaintiff was no longer entitled to benefits under the Group Contract, it applied the Mental Illness limitation to her conditions that fit within the definition of that term (depression), **and** considered Plaintiff's physical impairment (concluding Plaintiff was not totally disabled from her own occupation under the Group Contract). These factual differences make *Cothran* readily distinguishable from this matter, and the court's holding in that case does not support Plaintiff's arguments and should be rejected.

In *Cothran*, when Reliance Standard terminated plaintiff's benefits, it notified her that it considered her condition to be a mental disorder and that payment of benefits for a mental disorder was limited to 24 months according to the terms of the plan. (*Cothran* Order at 2-3.)

---

[3] In Plaintiff's Memorandum, she cites exclusively from the district court's order in *Cothran*. (Plaintiff attached the order to her Memorandum as Exhibit A.) AUL's discussion of *Cothran* likewise will cite to the district court's order.

4

The LTD plan at issue in *Cothran* contained a limitation on payment of benefits for total disability due to mental or nervous disorders.[4] However, the plan did not define the term "mental or nervous disorders." (*Cothran* Order at 7.) Reliance Standard based its decision to terminate the plaintiff's benefits solely on the plan's mental or nervous disorders limitation. (*Cothran* Order at 6.)

The district court stated in *Cothran* that because Reliance Standard apparently knew the plaintiff based her claim for disability benefits on a combination of physical and mental ailments, the precise meaning of the term "mental disorder" became crucial. (*Id.*) The court determined the plan's limitation on payment of benefits for mental or nervous disorders was "imprecise" (*Cothran* Order at 7) and noted the plan did not define the term mental or nervous disorders (*Id.*). The court ultimately concluded that the plan's mental or nervous disorder limitation was ambiguous as applied to the plaintiff's claim. After concluding the plan's limitation on benefits for mental or nervous disorders was ambiguous, the doctrine of *contra proferentum* was applied and the court construed the ambiguity against Reliance Standard. (*Cothran* Order at 8-9.)

However, unlike the plan in *Cothran* or the plans at issue in the cases cited in *Cothran*, the Group Contract **specifically defines** the term "Mental Illness." The Group Contract's definition of the Mental Illness Maximum Benefit Duration distinguishes this matter from *Cothran* and the cases on which *Cothran* relies. Defining the term Mental Illness avoids an inquiry used in *Cothran* to determine the scope of the limitation and eliminates any confusion related to the Maximum Benefit Duration.

More specifically, the definition of Mental Illness does not cause a participant or a court to guess about limitations when a participant claims disability based on both mental and physical

---

[4] The specific plan provision at issue in *Cothran* stated, "Monthly Benefits for Total Disability due to mental or nervous disorders will not be payable beyond twenty-four (24) months unless you are in a Hospital or Institution at the end of the twenty-four (24) month period." (*Cothran* Order at 2.)

5

conditions. There should be no trouble accepting the notion of the common and ordinary meaning of "Mental Illness" encompassing Plaintiff's diagnoses. *See Tumbleston v. A.O. Smith Corp.*, 28 Fed. App. 231, 236 (4th Cir. 2002). The Group Contract and its definitions permit evaluation as to whether a condition is subject to the limitation. If the disability is due to any condition classified as a mental disorder in the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM") (excluding mental retardation), then the disability is included within the Mental Illness Maximum Benefit Duration. The absence of a "mental or nervous disorders" definition in *Cothran* produced confusion in that case as to the insurer's application of the limitation in the face of the plaintiff's physical and mental aliments. However, in the present matter, determination as to whether benefits are payable beyond the Maximum Benefit Duration can be made by the definition of "Mental Illness" and associated benefit limitations.

When DRMS[5] notified Plaintiff of the termination of her LTD benefits in its September 22, 2006, letter, it advised her that based on the current and medical vocational information in her claim file, she was no longer "totally disabled" under the Group Contract because she was capable of working in her own occupation. (AR 540.) DRMS's letter noted the conclusion (based upon medical information from Plaintiff's treating physicians) that her primary disabling condition at that point was her depression. (AR 541.) The letter advised Plaintiff her benefits were limited to the Maximum Benefit Duration of 24 months due to Mental Illness. (*Id.*) The letter concluded by stating, "Since your Mental Illness is your primary disabling condition and has been limited to 24 months of benefits ending 9/14/06 and your physicians indicate you have the physical capacity for your own occupation, we determined you are no

---

[5] DRMS is a third-party administrator retained by AUL to administer claims under AUL's Group Disability Insurance Contracts, including the Contract selected by, issued to, endorsed by, and sponsored by Plaintiff's employer. (AR 481.)

longer disabled under the Policy."  (AR 542.)  DRMS applied the Mental Illness limitation to Plaintiff's conditions and considered Plaintiff's physical impairment (concluding Plaintiff had the physical capacity for her own occupation).  Depression clearly fits within the Group Contract's definition of Mental Illness.

The Group Contract clearly informs a participant of a maximum benefit duration when disability is due to Mental Illness.  "'Ambiguity only exists if one of the reasonable interpretations of a policy term results in coverage while the other results in exclusion.'"  *Johnson v. Gen. Am. Life Ins. Co.,* 178 F. Supp. 2d 644, 652 (W.D. Va. 2001) (citations omitted).  The only reasonable interpretation of the Group Contract is when disability is due to Mental Illness, then benefits are subject to the Maximum Benefit Duration.  No ambiguity exists with respect to the Maximum Benefit Duration for disability due to Mental Illness.[6]  It is well-settled that courts will not create ambiguity in a plan where none exists.  *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir. 1993).

Plaintiff's arguments that she is disabled because of a combination of physical and mental issues flies in the face of the clear Maximum Benefit Duration for a disability due to Mental Illness.  When reviewing a claim benefit decision under ERISA, "[t]he plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Kress v. Food Employers Labor Relations Ass'n*, 391 F.3d 563, 568 (4th Cir. 2004) (internal quotation marks omitted).  Therefore, Plaintiff's arguments are contrary to the clear and plain terms of the Group Contract and must be rejected.  AUL paid Plaintiff benefits for the Maximum Benefit Duration for a disability due to Mental Illness (24 months) and then paid an additional 3 months of

---

[6] Because no ambiguity exists with respect to the Group Contract's Mental Illness limitation, the doctrine of *contra proferentum* does not apply in this matter.  *See High v. E-Systems Inc.*, 459 F.3d 573, 578-79 (5th Cir. 2006).

benefits (under a reservation of rights) thereafter.  (*See* AR 542.)  Thus, Plaintiff has no legitimate claim for any additional benefits under the Group Contract.

The Group Contract provides that benefits for a "Mental Illness" are limited to a 24-month period.  Plaintiff was found to be totally disabled from conditions which fall easily within the ordinary meaning of a "Mental Illness." *See Tumbleston*, 28 Fed. App. at 237.  In *Tumbleston* the Fourth Circuit concluded that the nervous or mental disease limitation in the plan at issue was not ambiguous despite the fact the term nervous or mental disease was not defined.  *Id.* at 236-37.  And though the term was not defined, the Fourth Circuit stated it had "no trouble accepting that the common and ordinary meaning of 'nervous or mental disease' would encompass Tumbleston's diagnoses of depression and anxiety. . . ."  (Citing *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154 (8th Cir. 1990), *cert. denied*, 501 U.S. 1238 (1991); *Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 983-84 (5th Cir. 1996).)  *Id.* at 236.

Numerous courts throughout the United States have reached similar results.  *See Lynd*, 94 F.3d at 983-84 (applying the plain meaning, the court denied coverage and determined that the limitation is unambiguous because the fact that a mental disorder has physical symptoms does not mean that the disorder is not a mental one); *Brewer*, 921 F.2d at 153-54 (applying the plain meaning of the policy language instead of using either party's interpretation, the court denied coverage and determined that mental illnesses should be classified as such based on their symptoms); *Johnson*, 178 F. Supp. at 654 (holding that "mental illness" in the policy provision unambiguously included a mental illness of any type, regardless of whether it stemmed from a coronary disease); *Hildebrand v. Fortis Benefits Ins. Co.* (In re Campbell), 116 F. Supp. 2d 937, 948 (M.D. Tenn. 2000) (holding that the mental illness limitation was unambiguous because it included mental illnesses of any kind); *Parker v. Metro. Life Ins. Co.*, 875 F. Supp. 1321, 1332

(W.D. Tenn. 1995) (holding that long-term disability coverage was properly denied because the broad language of the mental illness limitation did not provide for a distinction between the origin or the cause of the disease, and thus, plaintiff's mental illness was subject to the limitation), *aff'd on other grounds*, 121 F.3d 1006 (6th Cir. 1997), *cert. denied*, 522 U.S. 1084 (1998).

In order for Plaintiff to demonstrate entitlement to any additional benefits, she must prove she cannot perform the material and substantial duties of any gainful occupation for which she is reasonably fitted by training, education, or experience and that the reason for her total disability is a physical impairment rather than Mental Illness.

**B.     PLAINTIFF HAS NOT PROVEN SHE IS "TOTALLY DISABLED" UNDER THE ANY OCCUPATION STANDARD.**

During the first two years of disability, benefits under the Group Contract are payable for total disability preventing her from performing the material and substantial duties of her own occupation (the "Own Occupation" standard). (AR 10.)  Thereafter, entitlement to benefits requires the participant be unable to perform the material and substantial duties of any gainful occupation for which she is reasonably fitted by training, education, or experience (the "Any Occupation" standard). (*Id.*)  Plaintiff received benefits for more than two years, from September 14, 2004, through December 31, 2006. (AR 540-42.)  Thus, Plaintiff has received all the benefits to which she would have been entitled under the Group Contract under the Own Occupation standard.  Consequently, in order to demonstrate entitlement to benefits after September 14, 2006, Plaintiff had to prove she met the Any Occupation standard—she cannot perform the material and substantial duties of any gainful occupation for which she is reasonably fitted by training, education, or experience.  As discussed in Defendant's Memorandum in Support of Judgment and as amplified below, the evidence does not support Plaintiff's claim she

9

is disabled under the Any Occupation standard. To the contrary, the evidence from Plaintiff's own medical providers unequivocally demonstrates she is capable of performing sedentary-level work.[7]

### 1. Contrary To Plaintiff's Assertions, Dr. Repik Has Not Attested To Plaintiff's Disability Under The Any Occupation Standard.

In Plaintiff's Memorandum, she cites to Dr. Repik's attending physician's statement ("APS") dated September 28, 2006, and contends on the basis of this APS that Dr. Repik "attested [to her] disability due to a combination of 'chronic pain and depression.'" (Plaintiff incorrectly identifies the date of Dr. Repik's APS as July 23, 2006. (Pl.'s Mem. at 6, 19.)) Plaintiff also contends Dr. Repik "felt" that Plaintiff was unable to work. (Pl.'s Mem. at 19.) Plaintiff's contentions, however, mischaracterize Dr. Repik's September 28, 2006, APS.

In her September 28, 2006, APS, Dr. Repik listed Plaintiff's diagnoses as chronic pain and depression. (AR 552.) She stated Plaintiff could not do heavy lifting (greater than 20 lbs.) or engage in prolonged sitting. (*Id.*) She assigned Plaintiff a Class 2 physical impairment rating (meaning Plaintiff was capable of medium manual activity). (AR 553.) Dr. Repik also assigned Plaintiff a Class 3 mental/nervous impairment rating (able to "engage in only limited stress situations and engage in limited interpersonal relations (Moderate limitation)"). (*Id.*) Dr. Repik states she **would not support** Plaintiff's claim for Social Security disability benefits. (*Id.* (emphasis added).)

---

[7] In a footnote in Plaintiff's Memorandum, she notes because the *de novo* standard of review applies in this matter, the court is not limited to considering only the evidence in the administrative record. (Pl.'s Mem. at 2.) While it is true that exceptional circumstances may warrant an exercise of the court's discretion to allow the introduction of evidence that was not presented to the plan administrator, Plaintiff does not allege any exceptional circumstances exist in the present matter. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993). AUL maintains there are no such exceptional circumstances and respectfully asserts this Court's review of Plaintiff's claim for benefits is limited to the evidence contained in the administrative record, which is attached as part of Exhibit 1 to the parties' Joint Stipulation.

Contrary to Plaintiff's characterization of the APS, Dr. Repik did not state she believed Plaintiff was unable to perform the duties of any occupation. (*Id.*) While Dr. Repik stated she was unsure when Plaintiff might recover sufficiently to perform the duties of Plaintiff's own job, she included no such qualification as to Plaintiff's ability to perform the duties of any other type of work. (*Id.*) Rather than expressing an opinion of Plaintiff being unable to perform any work, Dr. Repik's September 28, 2006, APS rates Plaintiff as being capable of medium manual activity. The APS demonstrates Plaintiff did not meet the Any Occupation standard based on a physical impairment at the time her benefits were terminated. AUL's decision to terminate Plaintiff's benefits, therefore, should be affirmed.

### 2. Dr. Dahlhausen's Records Do Not Support Plaintiff's Claim That She Is Totally Disabled.

In Plaintiff's Memorandum, she appears to contend Dr. Dahlhausen has opined she is totally disabled. (Pl.'s Mem. at 26.) However, there is absolutely no support for such a contention.

In September 2006, and after a two-year hiatus, Plaintiff suddenly revisited Dr. Dahlhausen for "disability discussion" and to request Dr. Dahlhausen fill out disability forms on her behalf. (AR 778.) In his office notes for September 27, 2006, Dr. Dahlhausen recommends a physical capacity exam (that Plaintiff never underwent). (*Id.*) Dr. Dahlhausen did complete an APS for Plaintiff dated September 27, 2006, but he declined to assign Plaintiff either a physical or mental/nervous impairment rating. (AR 550-51.) Plaintiff contends in his September 27, 2006, APS, Dr. Dahlhausen affirmatively stated he did not expect Plaintiff to be able to return to her own occupation or any other occupation. (Pl.'s Mem. at 19.) That contention is not an accurate characterization of Dr. Dahlhausen's APS.

In his APS, Dr. Dahlhausen affirmatively stated he would support Plaintiff's claim for Social Security disability benefits if he did not expect Plaintiff to be able to return to her occupation or any other occupation. (AR 551.) However, Dr. Dahlhausen expressed no opinion whatsoever as to Plaintiff's inability to return to her job or any other occupation. (AR 550-51.) Dr. Dahlhausen qualified his affirmative support for a claim for Social Security disability benefits by stating he needed Plaintiff's records for the last two years, a "psych letter," and a physical capacity evaluation. (AR 551.) Indeed, in his remarks on the APS, Dr. Dahlhausen states he needs more information since he had not seen Plaintiff for two years until the prior week. (*Id.*)

   **3. Dr. Gundi's Affidavit Is Not Consistent With His APS And Is Completely Unsupported By The Objective Medical Evidence In His Own Records.**

In Plaintiff's Memorandum, she contends Dr. Gundi's June 1, 2007, affidavit is consistent with his December 2006 APS. (Pl.'s Mem. at 19.) However, Dr. Gundi's affidavit is not consistent with his APS, and the affidavit is completely unsupported by the objective medical evidence contained in Dr. Gundi's own records.

On December 12, 2006, Dr. Gundi prepared an APS for Plaintiff in which he assigned her a Class 4 physical impairment rating ("moderate limitation of functional capacity, capable of clerical/administrative (sedentary) activity"). (AR 548-49.) But in a June 1, 2007, affidavit, Dr. Gundi stated Plaintiff was totally disabled. (AR 720-21.) Notwithstanding the representation of total disability in his affidavit, Dr. Gundi's examination notes belie his conclusion. There is nothing in Dr. Gundi's medical records even suggesting Plaintiff's condition deteriorated between December 12, 2006, and June 1, 2007. To the contrary, his examination notes from January, February, and March 2007 actually show marked consistent improvement in Plaintiff's physical condition. (*See* AR 606, 722-23.) There is nothing in the administrative

record suggesting Dr. Gundi even examined Plaintiff between March 12, 2007 (the last examination indicated in the medical records submitted by Plaintiff's counsel), and the date of his affidavit.

As AUL discussed in its Memorandum in Support of Judgment, but for the physician/patient relationship between Dr. Gundi and Plaintiff and the attendant inclination (indeed, the obligation) of a treating physician to advocate on behalf of his patient, the discrepancy between Dr. Gundi's office notes and his affidavit would be inexplicable. (*See* Def.'s Mem. at 30-31.) From review of Dr. Gundi's medical records, however, it is clear his affidavit is completely unsupported by the objective medical evidence in those records.

### 4. Plaintiff's Criticism of Dr. Bress's Opinion Is Meritless.

In Plaintiff's Memorandum, she contends the opinion of Dr. Bress, the Board-certified rheumatologist who conducted an independent medical review of Plaintiff's records, was deficient because he did not consider her mental condition. (Pl.'s Mem. at 24-25.) That argument is meritless. As discussed above, to demonstrate entitlement to any additional benefits, Plaintiff must prove she is unable to perform any occupation based on a physical impairment rather than a Mental Illness. Dr. Bress **did** consider Plaintiff's physical condition and basically concurred with the physical impairment ratings of Plaintiff's treating physicians (Drs. Repik and Gundi) that Plaintiff was capable of sedentary work. (*See* AR 637, 642.) For example, while Dr. Bress questions both Dr. Gundi's diagnosis and treatment of rheumatoid arthritis, he ultimately agreed with Dr. Gundi's conclusion (inherent in a Class 4 physical impairment rating) that Plaintiff is capable of sedentary work. (AR 549.) Moreover, while Dr. Bress concluded Plaintiff is capable of sedentary work, Dr. Repik actually rated Plaintiff as being capable of medium manual activity. (*Compare* AR 642, 637 *with* AR 520, 553.) Thus the physical

impairment ratings Dr. Repik assigned are actually less restrictive than would be justified by Dr. Bress's review. Dr. Bress considered Plaintiff's physical impairment, and there is nothing deficient about his opinion that Plaintiff is capable of sedentary work.

The APSs of Drs. Repik and Gundi demonstrate that Plaintiff did not meet the Any Occupation standard based on a physical impairment at the time her benefits were terminated. Plaintiff has not supplied any evidence showing she is currently totally disabled and entitled to any further benefits under the Group Contract. Therefore, the decision to terminate Plaintiff's benefits was proper and should be affirmed.

## II. CONCLUSION

For the reasons set forth in its Memorandum in Support of Judgment and as amplified herein, AUL's decision to terminate Plaintiff's benefit payments was proper and should therefore be affirmed.

Dated this 17th day of March, 2008.

          Respectfully submitted,

          OGLETREE, DEAKINS, NASH,
          SMOAK & STEWART, P.C.

By:   /s/ Vance E. Drawdy
      Vance E. Drawdy, Fed. I.D. No. 6069
      PO Box 2757
      Greenville, SC 29602-2757
      Telephone: 864.241.1840
      Facsimile: 864.235.4754
      E-mail: vance.drawdy@ogletreedeakins.com
      ***Attorneys for Defendant***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| MELISSA ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 8:07-cv-2449-RBH |
| AMERICAN UNITED LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    I, Vance E. Drawdy, hereby certify that I have this day electronically filed the foregoing **DEFENDANT'S REPLY TO PLAINTIFF"S MEMORANDUM IN SUPPORT OF JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following person(s):

    Robert E. Hoskins, Esq.
    Foster Law Firm, LLP
    PO Box 2123
    Greenville, SC 29602

Dated this 17th day of March, 2008..

    /s/ Vance E. Drawdy
    Vance E. Drawdy (Fed. I.D. No. 6069)
    OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
    PO Box 2757
    Greenville, SC 29602-2757
    Phone: 864.271.1300
    Fax:    864.235.4754

6149307.1