IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Melissa Alexander, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:07-2449-JMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| American United Life Insurance Company, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for review of the claim administrator's decision to deny long-term disability ("LTD") benefits to Plaintiff Melissa Alexander ("Alexander") under an LTD insurance policy ("Policy") governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). Defendant American United Life Insurance Company ("American") insures the Policy. Alexander seeks LTD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The matter came before the court for a hearing on September 20, 2010. For the reasons set forth below, the court reverses American's denial of LTD benefits.

**FACTUAL AND PROCEDURAL HISTORY**

Alexander's claim arises under a group disability policy that American issued to Alexander's former employer, Computer Software Innovations, Inc. ("CSI"). Alexander was employed as a Programmer Manager by CSI from August 1, 1990, until June 14, 2004, at which time she

1

discontinued her employment due to chronic joint and muscle pain. As a Programmer Manager, Alexander's job duties included problem solving, research, and programming, as well as managing six to seven employees. The Programmer Manager position is sedentary in nature, involving mostly sitting, with occasional walking, bending, stooping, or reaching above shoulder.

Alexander submitted an application for benefits under the Policy to American on or about July 1, 2004. Alexander's stated grounds for her claim were physical in nature and included a description of migraine headaches and chronic pain. In support of her claim, Alexander submitted medical records and Attending Physician's Statements from two of her treating physicians: Dr. Barbara S. Repik (internist) and Dr. Robert Schwartz (physiatrist). Dr. Schwartz supported her claim of chronic pain. Dr. Repik diagnosed Alexander with arthralgias (or joint pain). American approved LTD benefits for Alexander under the Policy's "own occupation" definition of disability.

Alexander did not submit any further Attending Physician's Statements from Drs. Repik or Schwartz. Instead, Alexander began submitting Attending Physician's Statements from her psychiatrist, Dr. Mario Galvarino. Dr. Galvarino indicated in the statements that Alexander was disabled due to her mental state and did not provide any comments regarding her physical condition. American paid Alexander benefits for approximately two years.

In April 2006, American (through third party administrator, Disability Reinsurance Management Service, Inc.) reviewed Alexander's file and determined that Alexander's primary disability arose from psychological or mental disorders and that her physical symptoms did not limit her ability to participate in sedentary functional activities. By letter dated September 22, 2006, American notified Alexander that her LTD benefits were not payable beyond September 14, 2006. The letter recited the Policy provisions relating to total disability and advised Alexander that, based on the current and medical vocational information in her claim file, Alexander no longer met the

Policy's definition of "total disability" because the medical information in her claim file indicated she was capable of working in her own occupation. The letter referenced an August 28, 2006, review of the medical information from Alexander's treating physicians and noted the conclusion that Alexander's primary disabling condition at that point was her depression. The letter also advised Alexander that her LTD benefits were limited to twenty-four months under the Mental Illness limitation on benefit duration.

Alexander appealed the decision to terminate her LTD benefits. Accordingly, American had Alexander's medical records independently reviewed by Dr. Norman Bress, a Board-certified rheumatologist. Dr. Bress stated that Alexander fit the 1990 criteria of the American College of Rheumatology for the diagnosis of fibromyalgia. However, Dr. Bress doubted whether Alexander had rheumatoid arthritis, and also questioned the legitimacy of her upper and lower back complaints because Alexander's records lacked, in his opinion, significant findings on exam or changes on imaging studies. His overall opinion was that Alexander could perform at least full time sedentary level work.

American also referred Alexander's medical records to Dr. Alan Neuren, a Board-certified psychiatrist and neurologist, for review. Dr. Neuren stated that Alexander's overall level of psychiatric care did not appear to have been appropriate for severe depression, that there were no findings to support a diagnosis of fibromyalgia or rheumatoid arthritis, and that it was unclear to him why one of Alexander's physicians treated Alexander for rheumatoid arthritis given the lack of findings. Dr. Neuren concluded that Alexander's primary impairing condition appeared to be depression and anxiety.

After receiving the initial reviews, Alexander's counsel submitted additional documents in support of Alexander's appeal. Counsel submitted Alexander's affidavit detailing the extent of her

physical and mental conditions and the effect of those conditions on her daily activities. Counsel also submitted the affidavit of Dr. Siddesh Gundi and his medical records attesting to Alexander's diagnosis of fibromyalgia. Dr. Gundi's affidavit attests to Alexander's diagnosis of fibromyalgia through the use of the "trigger points" test which is acknowledged by the American College of Rheumatology. He further details Alexander's subjective symptoms including, chronic muscle and joint pain, swelling of the joints, and the inability to sit or stand for extended periods of time. Although the parties dispute the physical impairment rating Dr. Gundi assigned to Alexander, he undoubtedly opines that Alexander could not perform her job without further rehabilitative services. Alexander's counsel also attached additional medical records of Dr. Robert LeBlond, Dr. Galvarino, Dr. Daniel Dahlhausen, and Dr. Repik, all of whom described or diagnosed Alexander as suffering from some degree of chronic pain disorder. Despite these additional documents supporting Alexander's claim of physical disability, American advised Alexander that it would uphold its decision to terminate payment of LTD benefits.

Alexander filed the instant action on July 22, 2007. The parties filed their joint stipulation and memoranda in support of judgment on March 6, 2008. Both parties also filed a reply to the respective memoranda on March 17, 2008.

## STANDARD OF REVIEW

A *de novo* standard would be appropriate in this case because the benefit plan at issue does not give American the discretionary authority typically afforded to administrators in benefit plan documents.[1] *See Firestone Tire & Rubber Co., et al v. Brunch*, 489 U.S. 101, 110 (1989)*; see also*

---

[1] The parties have agreed that a *de novo* standard of review is applicable in this action.

4

*Woods v. Prud. Ins. Co. of Am.,* 528 F.3d 320, 322 (4th Cir. 2008) ("Generally, the denial of benefits by a plan administrator is reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); *see also Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir.1993) (holding that the de novo standard of review allows the court to examine all of the evidence in the record and decide whether or not the plaintiff in a case is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits).

## DISCUSSION

American based its determination to terminate Alexander's LTD benefits on the language of the Policy and American's interpretation of Alexander's medical records. Under the Policy, disability is defined as follows:

> TOTAL DISABILITY and TOTALLY DISABLED mean that because of Injury or Sickness:
> 1. the Person cannot perform the material and substantial duties of his regular occupation; and
> 2. after benefits have been paid for 2 years, the Person cannot perform the material and substantial duties of any gainful occupation for which the Person is reasonably fitted by training, education or experience.

(J.A. 10). Additionally, the Policy contains the following limiting language depending on the characterization of the disability:

> MENTAL ILLNESS LIMITATION means [in part]:
> Monthly Benefits for Disability due to Mental Illness will not be payable beyond the Maximum Benefit Duration. In addition, if the Maximum Benefit Duration is longer than 24 months, benefits for Disability due to Mental Illness will not exceed 24 months of Monthly Benefit payments . . . .

(J.A. 28). American determined that Alexander's conditions did not limit her ability to perform her own occupation or any occupation in her field of training because of her skill set and the nature of

5

her job responsibilities. Additionally, American determined that Alexander had exhausted all of her LTD benefits under the time limitations for mental illness under the Policy.

It appears from the record that Alexander originally claimed disability on the grounds of a physical disability. American analyzed and accepted Alexander's claim. Sometime thereafter, American performed an audit of Alexander's file and determined, because her continuing Attending Physician's Statements were completed by her psychiatrist, that her disability had transformed into a mental disability instead of, and not in addition to, a physical disability. It further appears from the record that, although Alexander submitted Attending Physician's Statements from Dr. Galvarino, she continued to see Dr. Repik and other doctors periodically for pain management. Additionally, when American notified Alexander that it was reconsidering the character of her disability, she obtained additional Attending Physician's Statements attesting to her continued physical impairment. However, American essentially ignored Alexander's treating physician's statements and her physical condition.

While there is no "treating physician" rule in ERISA cases, a reviewer cannot simply ignore a treating physician's reliable opinion and medical evidence. *See Black & Decker Disability Claim v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reasonable evidence, including the opinions of a treating physician."). "To be sure, ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not." *White v. Sun Life Assurance Co. Of Canada*, 488 F.3d 240, 254 (4th Cir.2007). However, to deny benefits under ERISA, an insurer must present grounds that "a reasoning mind would accept as sufficient" to supports its decision. *Id.* (internal citations omitted). American's sole reliance on its own expert reviews - one of which actually stated that Alexander fit the 1990 criteria of the

American College of Rheumatology (ACR) for the diagnosis of fibromyalgia - was not reasonable in this case.

Alexander's case is very similar to *Cothran v. Reliance Standard Life Ins. Co.*, 6:98-cv-03489, 1999 WL 33987897 (D.S.C. 1999) (unpublished), *affirmed by Cothran v. Reliance Standard Life Ins. Co.*, 202 F.3d 257 (4th Cir. 1999) (unpublished). In *Cothran*, the plaintiff suffered from a combination of physical and mental/nervous conditions which caused her disability. The insurer acknowledged Cothran's disability, but took the position that the insured was not entitled to collect any additional benefits due to the policy's mental illness limitation. The *Cothran* court examined whether such a limitation would apply where a claimant suffered from a combination of physical and psychiatric issues or, simply, in a situation where a claimant's disability was solely attributable to psychiatric issues. The court held that Cothran was disabled as a result of a combination of physical and psychiatric problems such that her disability was not subject to the policy's mental/nervous limitation. The Fourth Circuit affirmed, specifically adopting the District Court's opinion.

American contends that *Cothran* is not analogous to the instant case. Instead, American urges this court to adopt the reasoning of *Tumbleston v. A.O. Smith Corp.*, 28 Fed.Appx. 231 (4th Cir. 2002) (unpublished) and *Lynd v. Reliance Standard Life Ins. Co.,* 94 F.3d 979 (5th Cir. 1996). Both *Tumbleston* and *Lynd* are inapposite to the resolution of this case. *Tumbleston* addresses the situation in which a claimant suffered predominantly from a mental nervous disorder and only after the cessation of benefits did the claimant assert a physical disability. Likewise, in *Lynd*, the claimant received two years of benefits based on a major depressive disorder, but claimed that such a disorder should be analyzed as physical instead of mental.

Unlike the claimant in *Tumbleston*, Alexander's claim has always focused, at least in part, on her physical disability. Alexander has also refrained from making the *Lynd* claimant's argument

that a mental disorder is really a physical one.  On the other hand, Alexander asserts that her condition is a combination of mental and physical disabilities, more like the circumstances presented in *Cothran*.  Therefore, after considering the combination of Alexander's conditions and the record as a whole, the court finds that American incorrectly terminated Alexander's LTD benefits.

American also requested that this court find that American is entitled to a setoff for any Social Security benefits received by Alexander.  During the hearing on this matter, Alexander's counsel disclosed that Alexander has not received any Social Security benefits and does not intend to pursue such benefits.  American's counsel acknowledged that a determination of a setoff would be unnecessary in such a circumstance.  Accordingly, this court declines to make any finding regarding the matter of setoff as it is now moot.

Accordingly, the court reverses American's decision to deny Alexander LTD benefits and **GRANTS** judgment in favor of Alexander.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

Greenville, South Carolina
September 23, 2010